UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT HINDS,

        Plaintiff,                          Case No. 1:19-cv-279

v.                                         Honorable Janet T. Neff

UNKNOWN LEWIS et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lewis and Tanner. The Court also will dismiss, for failure to state a claim, all of Plaintiff's claims against Defendant Maschino, with the exception of his retaliation claim.

**Discussion**

I. <u>Factual Allegations</u>

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan, and the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues ARF Property Room Correctional Officer (unknown) Lewis, ARF Prison Counselor J. Tanner, and LRF Correctional Officer (unknown) Maschino.

Plaintiff's complaint centers on a series of decisions by three MDOC officials at two different institutions to confiscate Plaintiff's keyboard, which he used "to praise and worship his God with sounds of music and songs of joy and love . . . ." (Compl., ECF No. 1-1, PageID.10, 13, 19.) Plaintiff alleges that, on March 23, 2015, while he was housed at the Kinross Correctional Facility (KCF), he purchased a Sonic Syn-Ky B54 electronic keyboard from Music Manor. (*See* Ex. 5 to Compl., Catalog Order Form, ECF No. 1-1, PageID.49; Ex. 6 to Compl., Receipt, ECF No. 1-1, PageID.51.) Plaintiff's possession of the keyboard was approved by the facility between April 3, 2015 and April 14, 2015.

When Plaintiff was transferred to ARF on May 11, 2016, Defendant Lewis confiscated the keyboard as excessive property, because it would not fit inside Plaintiff's state-issued duffel bag, as required under MDOC Policy Directive (PD) 04.07.112 ¶ C (eff. Dec. 12, 2012). Lewis issued a Notice of Intent to Conduct an Administrative Hearing (NOI) on the confiscation. Plaintiff complained that Lewis' interpretation of PD 04.07.112 was incorrect, because it failed to account for the provisions of ¶ W of the policy, which states, in relevant part,

> musical instruments that are difficult to pack with personal property (e.g. guitar; keyboard) also may be packed separately either in a case owned by the prisoner or, if a case is not owned, in an appropriate container with adequate packing materials.

*Id.* Plaintiff alleges or suggests that Lewis' action to confiscate the keyboard violated MDOC and ARF policies, deprived him of his property without compensation, wantonly inflicted pain and suffering on him, deprived him of his right to freely exercise his religion, and discriminated against him.

On May 17, 2016, Defendant Tanner conducted an administrative hearing on the NOI. Tanner concluded that the keyboard was not allowable property, both because it could not be packed into a standard-issue duffel bag and because it had a microphone input jack and a voice-recording capability, making it a prohibited item under PD 04.07.112, Attachment C, #38. (Ex. 8 to Compl., Admin. Hr'g Report, ECF No. 1-1, PageID.79-80.) Tanner determined that the keyboard would be mailed out to an address of Petitioner's choosing at Petitioner's expense. Plaintiff asserts that the determination violated prison policy for a variety of reasons: the keyboard was capable of recording only internally produced musical notes, not voices; Petitioner was entitled to keep the keyboard, as it was purchased from an MDOC-approved vendor and was subsequently authorized by the MDOC; and under PD 04.07.112 ¶ W, instruments such as a keyboard can be packed separately and do not need to fit into a duffel bag. Plaintiff alleges that Tanner violated prison policy, deprived him of his property without due process, violated his right to equal protection, deprived him of his right to freely exercise his religion, and wantonly inflicted pain and suffering him.

Plaintiff attaches an email dated June 8, 2016, from an employee at the company that sold the electronic keyboard. The employee advised that the keyboard could only record internal sounds and could not record voice or any other external sound. (Ex. 9 to Compl., Email from Music Manor, ECF No. 1-1, PageID.82.)

In addition, Plaintiff attaches a letter from Whitney Tompkins of the Legislative Ombudsman's Office dated January 4, 2018. The letter recited the result of the investigation of Plaintiff's complaint about his keyboard. Tompkins reported that ARF had confiscated his keyboard because it was too large to fit into a state-issued duffel bag. Although ARF staff had advised Plaintiff that the keyboard would be mailed out, it had been kept in the ARF property room. Plaintiff had since been transferred to the Bellamy Creek Correctional Facility (IBC). Tompkins advised that PD 04.07.112 permitted the warden of an institution to choose what musical instruments were allowable, saying, "In facilities where musical instruments cannot be purchased by prisoners, a storage location will be identified where the musical instrument and case will be stored for the prisoner until they transfer to another facility, parole, or discharge." (Ex. 11 to Compl., ECF No. 1-1, PageID.88.) Tompkins advised Plaintiff that, because IBC did not allow keyboards to be kept inside inmate cells, his musical instrument would be kept in IBC storage, to be transferred with Plaintiff when he is moved to a facility that allows instruments. Plaintiff was advised that, in the interim, he could use the keyboard provided by IBC's music room. He also was told that, when he was transferred to a prison that allowed prisoners to possess musical instruments, he would get his instrument back.

Plaintiff transferred to LRF on January 26, 2018. Plaintiff alleges that LRF is a facility that allows prisoners to possess a keyboard. During the initial unpacking of Plaintiff's personal property, Defendant Maschino confiscated the keyboard. Objecting to the confiscation, Plaintiff gave Defendant Maschino copies of his communication with Tompkins and referenced PD 04.07.112 ¶ W and Attachment C #38. Defendant Maschino read the contents of Plaintiff's ARF grievance about the keyboard. Based on the result contained in the grievance response, Maschino told Plaintiff that he had to seize the keyboard. Plaintiff argued with Defendant

4

Maschino that the administrative responses were inaccurate and had been effectively nullified by Tompkins' letter. Defendant Maschino allegedly became belligerent and irate with Plaintiff, saying:

> I don't give a f*ck that the Ombudsman confirmed or agreed that the responses and findings to your grievance did not prove that your keyboard was excessive property or illegal contraband and that she ordered it to be stored in LRF's property room because I believe that you should have lost that grievance and that's why I'm confiscating your f*cking property, and you will never get it back and I will destroy it.

(Compl., ECF No. 1-1, PageID.15.)

On February 9, 2018, Defendant Maschino sent Plaintiff a memo about the keyboard, which stated:

> As I informed you when you rode in, I was going to check on the status of the keyboard. I emailed a copy of the letter you provided along with the paper work that was with the keyboard to the ombudsmen's office.
>
> I received a reply from a W. Tompkins, she states that she is sending you a letter clarifying that just because you transferred, you do not get your key board back. With that notice from the Ombudsmen's office that I received, you will now have to decide what to do with your keyboard. Your options are one of the following, 1) send it to a person you choose and pay the shipping cost, 2) have the keyboard pickup up [sic] on a visit by a person you designate, it will be held up there for 30 days. Or 3) dispose of the keyboard.

(Ex. 13 to Compl., Maschino memo, ECF No. 1-1, PageID.94.) Plaintiff complains that Defendant Maschino never issued an NOI and that Plaintiff never received a hearing on the LCF confiscation. On February 14, 2018, the LRF property room issued a Property Disposal Notice, again advising Plaintiff of his options for handling the keyboard. (Ex. 17 to Compl., ECF No. 1-1, PageID.104.)

Plaintiff received two letters from Ms. Tompkins, dated February 1 and 13, 2018, reiterating that the warden of a facility has the final say on which instruments are allowable and that, just because Plaintiff transferred to LRF, he was not necessarily entitled to his keyboard. She

5

indicated, however, that the keyboard would be held in the LRF property room. (*See* Ex. 11 to Compl., PageID.89; Ex. 15 to Compl., PageID.100.)

Plaintiff alleges that Defendant Maschino confiscated his keyboard in retaliation for Plaintiff's grievances and communications with the Ombudsman's Office. He also alleges that the confiscation violated prison policies, deprived him of his property without due process, subjected him to discriminatory treatment in violation of the Equal Protection Clause, prevented him from freely exercising his religion, and subjected him to wanton and malicious treatment that caused him serious mental and emotional injury.

Plaintiff seeks compensatory and punitive damages, together with injunctive relief in the form of a new keyboard and a permanent injunction permitting Plaintiff to possess that keyboard during the duration of his incarceration.

II. <u>Failure to State a Claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Violations of Prison Policy

Plaintiff alleges that Defendants Lewis, Tanner, and Maschino all violated prison policy when they determined that he was not permitted to keep his keyboard in his cell, either at ARF or LRF. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendants' alleged failures to comply with administrative rules or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007);

*Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). As a consequence, Plaintiff's allegations concerning the alleged violations of prison policy fail to state a federal claim.

  IV.  Due Process

  Plaintiff complains that he was deprived of his property by all three Defendants without due process of law. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, that is, that the confiscations were in violation of policy, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

  Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive

04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Even if Plaintiff's claim were not barred by the *Parratt* doctrine, he would fail to state a claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled

to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Plaintiff does not allege that he has been subjected to a sanction that will inevitably affect the duration of his sentence. He instead suggests that the confiscation of his keyboard is of sufficient significance to be protected by the Due Process Clause. Prisoners do not have a constitutional right to maintain an unlimited amount of property in their cells. *See Friend v. Chapleau*, No. 95-5628, 1995 WL 607835, at *2 (6th Cir. Oct. 13, 1995) (holding that the defendant did not have a constitutional right to possess unlimited amounts of legal property); *see also Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the . . . analysis set forth in *Sandin*."). Plaintiff fails to allege how the limitation on his in-cell possession of a keyboard is sufficiently atypical and significant to amount to a liberty or property interest protected by the Due Process Clause. Finally, because he has no property interest in possessing his keyboard in his cell, his allegations that

Defendants' decisions were based on false information about the ability of his keyboard to record external sounds fail to demonstrate a constitutional deprivation.

For all of these reasons, Plaintiff's due process claims against all Defendants will be dismissed.

V. Eighth Amendment

Plaintiff alleges that Defendants, by their actions in taking his keyboard, subjected him to malicious and wanton infliction of emotional pain and suffering. Although Plaintiff does not mention the Eighth Amendment, his allegation of wanton infliction of pain arguably implicates that provision.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Notwithstanding Plaintiff's allegation that the deprivation of his keyboard amounted to a wanton infliction of pain, such an allegation does not demonstrate that Plaintiff was

11

deprived of an essential element necessary for life, such as food, medical care or sanitation. *Rhodes*, 452 U.S. at 348. Instead, Plaintiff alleges the sort of minimally unpleasant experience that does not rise to the level of an Eighth Amendment claim.

Moreover, absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, his claim for emotional damages is barred.

VI. Free Exercise

Plaintiff claims that Defendants violated the rights guaranteed him by the Free Exercise Clause by confiscating his keyboard, which he used to play worshipful music. It is well-settled that prisoners' rights under the Free Exercise Clause may be subject to reasonable restrictions. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995). Accordingly, Plaintiff's First Amendment rights were not violated if the challenged policies were reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Prisoners are not entitled to the "'best possible means of exercising their religio[n].'" *Weinberer v. Grimes*, No. 07-6461, 2009 WL 331632, at *4 (6th Cir. Feb. 10, 2009) (quoting *A'la v. Cobb*, 208 F.3d 212 (6th Cir. 2000) (table)). Rather, prison officials receive "wide-ranging deference in the adopting and execution of policies and practices that in their judgment

12

are needed to preserve internal order and discipline and to maintain institutional security." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

As an initial matter, Plaintiff's complaint is insufficient because it fails to allege that the prohibited practice—in-cell use of a musical instrument—was required by his religion. *See Weinberger*, 2009 WL 331632, at *4 (holding that, because the plaintiff failed to allege that the use of a musical instrument was required by his religion, he failed to state a free exercise claim); *Spies v. Voinovich*, 173 F.3d 398, 405 (6th Cir. 1999) (finding that prisoner could "freely exercise his religion without [prohibited] items, for he has not contended that his religion requires the use of these articles during worship"); *Pearce v. Sapp*, 182 F.3d 918 (6th Cir. 1999) (table) (affirming dismissal of complaint where prisoner failed to allege that possession of prohibited items was "mandated by his religion").

Moreover, the challenged practices here are comparable to the kinds of restrictions that the Sixth Circuit has found to be reasonably related to legitimate penological interests. *See Weinberger*, 2009 WL 331632, at *4 (rejecting claim involving prohibited practices that included the use of a musical instrument) (citing numerous cases, including *Fisher v. McGinnis*, 238 F.3d 420 (6th Cir. 2000) (table) (denying relief where prisoners alleged that they were denied use of a prayer rug and not permitted to hold prisoner-led religious services although other religious groups were allowed to do so); *Mabon v. Campbell*, 205 F.3d 1340 (6th Cir. 2000) (table) (denying relief where prisoners alleged, inter alia, that they were denied religious videos); *McElhaney v. Elo*, 202 F.3d 269 (6th Cir. 2000) (table) (denying relief where prisoner alleged that he was denied access to various religious items including a ceremonial pipe and materials to make a medicine bag); *Burridge v. McFaul*, 181 F.3d 100 (6th Cir. 1999) (table) (denying relief where prisoner alleged that he was denied visits by a rabbi)). Because Plaintiff utterly fails to allege facts showing that

the use of in-cell, keyboard-produced music was required by his sincerely held religious beliefs, he fails to allege a free exercise claim. Therefore, the restrictions imposed on Plaintiff fell within the discretion accorded to prison officials.

VII. Equal Protection

Plaintiff argues that he has been subjected to discrimination by Defendants' actions, because other unspecified prisoners at the two facilities were entitled to possess musical instruments in their cells, when Plaintiff was not allowed to have his keyboard. Plaintiff's allegations implicate the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The threshold element of an equal protection claim is disparate treatment. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"); *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to possess

musical instruments in their prison cells. Further, as the Court previously held, Plaintiff has not alleged that having a musical instrument in his prison cell was necessary to his fundamental right to freely exercise his religion.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the official's] treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Although Plaintiff makes a conclusory claim that other prisoners at both ARF and LRF were allowed to keep unspecified musical instruments in their cells, he wholly fails to specifically allege that any other prisoner was similarly situated in all relevant respects. Plaintiff does not identify any individual who was allowed to keep a keyboard. Moreover, even if some prisoner was allowed to possess a keyboard, Plaintiff fails to allege that such keyboard was of the

15

same type as Plaintiff's. Plaintiff also does not allege that the other prisoner's keyboard was unable to be packed in a state-issued duffel bag with the prisoner's other property. And he does not allege that any other prisoner had documentation concluding that his keyboard could record—regardless of the accuracy of that conclusion. Indeed, the correspondence from the Legislative Ombudsman's Office, upon which Plaintiff relies heavily for his claim of right, indicates that neither ARF nor LRF permitted the in-cell possession of a keyboard like Plaintiff's, especially when it did not fit in a state-issued duffel bag. (*See* Ex. 11 to Compl., PageID.88 (advising Plaintiff that musical keyboards were not allowed to be stored in prisoner cells at either ARF or ICF); *Id.*, PageID.89 (advising that LRF had decided not to allow Plaintiff's type of musical keyboard to be held in-cell); Ex. 15 to Compl., PageID.100 (again advising that the LRF warden had determined that Plaintiff's type of keyboard was not allowed to be kept in his cell).)

In other words, Plaintiff's allegations are wholly conclusory. He merely states that he is being treated differently than other prisoners. Plaintiff provides no specific factual allegations to support his contention. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state an equal protection claim against any Defendant.

VIII. <u>Retaliation</u>

Plaintiff alleges that Defendant Maschino retaliated against him for filing a complaint with the Legislative Ombudsman. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3)

the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

This Court has held that the filing of a complaint with the Ombudsman's office is protected conduct. *Fletcher v. Bradford*, No. 1:18-cv-1160, 2018 WL 5961044, at *3 (W.D. Mich. Nov. 14, 2018) (holding both that the MDOC had conceded that the filing of a complaint was protected conduct and that, because the purpose of the Ombudsman's office was to receive complaints from prisoners, the filing of a complaint with the office is protected conduct as a matter of law) (citing *Griffin v. Berghuis*, 563 F. App'x 411 (6th Cir. 2014) (holding that participation in an investigation by the Ombudsman's office was conceded by the defendants to be protected conduct)). Plaintiff therefore has sufficiently alleged the first prong of the *Thaddeus-X* standard.

The second prong, the adverseness inquiry, is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit held that the "threshold [for adverseness] is intended to weed out only inconsequential actions," and that a loss of privileges, even if relatively brief and minor, is sufficiently adverse to state a claim. *Id.* at 266-67. The Court concludes that confiscation of a musical instrument is sufficiently adverse to meet the second prong of the *Thaddeus-X* standard.

Upon initial review, the Court concludes that Plaintiff has alleged sufficient facts of retaliatory motive to meet the third prong of *Thaddeus-X*. Accordingly, Plaintiff's retaliation claim against Defendant Maschino survives initial screening.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Lewis and Tanner will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all of Plaintiff's claims against Defendants Maschino, with the exception of his retaliation claim. The retaliation claim against Defendant Maschino will remain in the case.

An order consistent with this opinion will be entered.

Dated: May 23, 2019   /s/ Janet T. Neff
　　　　　　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　　　　　　United States District Judge